Filed 7/1/24  P. v. Lee CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098428 |
| Plaintiff and Respondent, | (Super. Ct. No. CR56910) |
| v. | |
| DARREN LEE, | |
| Defendant and Appellant. | |

Following an evidentiary hearing, the trial court denied defendant Darren Lee's petition for resentencing under former Penal Code section 1170.95 (now section 1172.6),[1] finding that the prosecutor had proven beyond a reasonable doubt that defendant could be convicted of two counts of murder on still-valid theories.  While this is not defendant's first appeal as of right, defendant's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, asking this court to independently review the record to

---

[1]     Further undesignated section references are to the Penal Code.  Defendant originally filed his petition under former section 1170.95, which has since been amended by Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022 (Stats. 2021, ch. 551, § 2), and then renumbered to section 1172.6 effective June 30, 2022.  (See Stats. 2022, ch. 58, § 10.)  For clarity, we refer to section 1172.6 throughout the opinion.

1

determine if there are any arguable errors that would result in a disposition more favorable to defendant. Defendant filed a supplemental brief noting his young age when the crimes were committed and arguing that the evidence was insufficient to show he was present when the victims were killed. Having considered defendant's supplemental brief in accordance with *People v. Delgadillo* (2022) 14 Cal.5th 216, we affirm.

## BACKGROUND

One night in June 1979 when defendant was 16 years old, he and three men, including Marty Jackson (also known as Spears), conducted a violent home invasion robbery in Newman, which defendant had planned. He was familiar with the house, drew a map of where guns and a safe would be located, and suggested they bring weapons with them. The group entered by a ruse that their car had run out of gas. Once inside, Jackson hog-tied the occupant's ankles and hands together behind his back and another man hit him on the head multiple times with a firearm. During the robbery, Jackson threatened to kill the occupant because he had seen Jackson's face, but the others told him not to do it. They stole a safe, firearms, and a knife.

The next night, Jackson planned a home invasion robbery of a residence in Modesto that he believed had large amounts of cash. The murder victims -- a husband and wife -- lived in the home. Defendant, Jackson, and two others participated in the robbery. Defendant and Jackson were armed with the guns and a knife stolen during the Newman robbery. They used the same ruse to gain entry. The husband, who had offered to get them gas from the garage, was hog-tied and beaten in the garage. Defendant's fingerprints were found on a car in the garage and his hair was found on the rope used to tie the husband. Defendant said Jackson hit the husband with a baseball bat, which he described as sounding like "hitting the concrete." Jackson then went into the house and ordered the wife upstairs to the master bedroom at gunpoint, and defendant followed. Defendant admitted taking diamond jewelry and money from upstairs in the bathroom and said he saw Jackson hog-tie the wife. He heard the wife yell, "no, please don't do

2

that," and heard her dress being ripped. He told his then-girlfriend that he saw Jackson rip the wife's dress while in her bedroom. Defendant claimed he and another companion left the house after hearing her scream.

The husband and wife were found murdered the following day. They had both been beaten in the head and neck area and had been stabbed. The husband had a fractured skull and his carotid artery had been sliced. The wife had injuries consistent with being struck by an axe and her jugular had been cut. They both eventually bled to death. Defendant later claimed that Jackson had killed the couple and said he was not present when either was stabbed.

In 1980, a jury found defendant guilty of two counts of murder, three counts of robbery, one count of burglary, and one count of assault. Attached firearm enhancements were also found true. After modification on appeal, he received two concurrent 25-year-to-life terms for the murders, a consecutive term of three years for one of the robbery counts, and a consecutive one year for the firearm enhancement with stayed terms on the remaining counts. (*People v. Lee* (Feb. 25, 1983, C010870) [nonpub. opn.].)

Going back to the trial, the court instructed on the natural and probable consequences doctrine of conspiracy liability for first degree murder and with the first degree felony-murder rule that at the time did not require a finding that defendant was the actual killer, intended to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life. (*People v. Lee* (Dec. 13, 2021, C093754).)

In 2019, defendant filed a section 1172.6 petition for resentencing, declaring that he could not currently be convicted of both murder counts. The trial court denied the petition at the prima facie stage.

Defendant appealed and we reversed, concluding that the record of conviction did not conclusively establish defendant was ineligible for relief as a matter of law as there were no jury findings, prior findings by this court, or any other findings related to defendant's convictions that necessarily found he was the actual killer, had the intent to

3

kill and aided and abetted the actual killer, or was a major participant who acted with reckless indifference to human life. (See *People v. Lee*, *supra*, C093754.) We remanded for the trial court to issue an order to show cause and hold an evidentiary hearing to determine whether defendant was entitled to relief under section 1172.6. (*People v. Lee*, *supra*, C093754.)

Following issuance of the remittitur, the prosecution filed an opposition asserting that defendant could still be convicted of murder under current law because the evidence showed he was a major participant who acted with reckless indifference to human life in the robbery and burglary of the two victims, and that defendant directly aided and abetted in their murders. The prosecution attached transcripts from witnesses who testified at defendant's murder trial, a transcript of a taped police interview with defendant that was played for the jury, and statements by defendant at several parole hearings discussing his involvement in the crimes.

Defendant filed a reply, urging the trial court to view any of defendant's statements during parole board hearings with caution given that such statements arguably were made under the coercion of attempting to obtain release. While defendant did not contest that he was in the murder victims' house and garage, he argued the evidence was unclear regarding whether he was present when they were killed, or if he had knowledge of his cohort's intent to kill the victims. He also argued that under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, the evidence did not show he was a major participant who acted with reckless indifference to human life because he did not plan the robbery or murders and did not supply the weapons. Defendant also argued that his youthfulness at the time of the crimes diminished his capacity to act with reckless indifference to human life.

At the hearing, the trial court admitted the trial transcripts and the transcript of defendant's taped police interview. Over defendant's objection, the court also admitted the parole hearing transcripts.

4

After taking the matter under submission, the trial court issued a 40-page written ruling denying the petition. The ruling recounts in detail the trial evidence as well as defendant's admissions during his police interview and his parole hearing. Acting as an independent factfinder, the court found beyond a reasonable doubt that under each of the factors outlined in *Banks* and *Clark*, defendant was a major participant who acted with reckless indifference to human life during the robbery and burglary of the murder victims. In reaching that conclusion, the trial court specifically considered defendant's youthfulness at the time of the crimes but found that defendant's participation showed planning and sophistication rather than disorganization or youthful impulsivity

Defendant appeals.

## DISCUSSION

The independent review procedures outlined in *People v. Wende*, *supra*, 25 Cal.3d at pages 442 through 443 are not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing. (*People v. Delgadillo*, *supra*, 14 Cal.5th at pp. 222, 224-225.) But where defendant has been notified that his appeal may be dismissed pursuant to *Delgadillo* and he files a supplemental brief raising various issues he wants considered, we must evaluate the specific arguments presented in the defendant's supplemental brief, but we are not required to independently review the record, although we may exercise our discretion to do so. (*Id.* at pp. 228-232.)

We turn here to the issues defendant raises in his supplemental brief. He first notes that over the last 45 years, science has found that juvenile brains still develop until age 26. Defendant raised the issue of his youth in the trial court. And the trial court thoroughly considered the argument but found that defendant's participation showed planning and sophistication rather than disorganization or youthful impulsivity. The record supports this conclusion. The evidence showed defendant planned the Newman robbery of a home with which he was familiar, drawing a map of the home so his cohorts

would know where the safe and guns were located and suggesting they bring weapons. Defendant and Jackson then used firearms and a knife acquired during the Newman robbery in the robbery-murder of the husband and wife the following night. Defendant and his cohorts also concocted the ruse of running out of gas to take advantage of the victims' sympathies and goodwill to gain entry into the homes during both robberies.

Defendant next asserts that he has consistently maintained that he was not in the house when the victims were stabbed, and that the time of death and his location at that time proves no one was stabbed while he was there. He asserts the prosecution relied on two alleged (although unidentified) "misquotes" from the parole hearings to create a new narrative that he was in the house when the victims were stabbed.

Defendant appears to be arguing that the court erred in admitting the parole hearing transcripts given the purported misquotes. The trial court, however, properly relied on defendant's statements from the parole hearings. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706.) "Having chosen to be truthful in the assessment interview and testify truthfully at the parole hearing, it is not fundamentally unfair to admit that information during a resentencing proceeding voluntarily initiated by [the] defendant bearing on some of the same issues." (*Ibid.*)

Even if we assume that defendant was no longer in the house when the husband and wife were stabbed, presence at the scene is only one factor of many to consider when determining whether a person qualifies as a major participant who acted with reckless indifference to human life. When determining whether a defendant was a "major participant" in a felony murder, the jury may consider the defendant's role in the planning and criminal enterprise that led to death, the defendant's role in supplying or using weapons, his awareness of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants, whether the defendant was present at the scene of the killing, was in a position to facilitate or prevent the actual murder and whether his own actions or inactions played a particular role in the death, and

6

what defendant did after lethal force was used. (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.) When deciding whether a defendant acted with reckless indifference to human life, the jury may similarly consider the use and number of weapons and the defendant's knowledge of them, the defendant's physical presence at the scene of the killing and opportunities to stop the crime or aid the victim, the duration of the felony, defendant's knowledge that his criminal partner was likely to kill and the defendant's effort to minimize the risk of the felony. (*People v. Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

Notably, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*People v. Banks*, *supra*, 61 Cal.4th at p. 803.)

Here, based on the *Banks* and *Clark* factors, the trial court as the trier of fact could reasonably conclude beyond a reasonable doubt that defendant was a major participant who acted with reckless indifference to human life even if he was not present when Jackson stabbed the husband and wife. The evidence at trial as well as defendant's own admissions during his police interview and his statements at the subsequent parole hearings show defendant played key roles in planning the Newman robbery and acquiring weapons to use in the robbery-murder the next day. During both robberies, the victims were hog-tied and subdued by being bludgeoned on the head with weapons so that they could not resist. Because defendant's hair was found on the rope used to tie the husband and his handprint was found on a car in the garage, the trial court could reasonably infer that defendant helped hog-tie the husband before Jackson smashed him in the head with a baseball bat while defendant stood nearby. Defendant then followed Jackson into the home where he knew Jackson attacked the wife at gunpoint after tying her up and ripping her clothing while she begged him to stop. Rather than aid either victim or try to get

7

Jackson to stop, defendant rifled through the wife's jewelry, took money, and fled when he heard her screaming.

At the Newman robbery, defendant was present when Jackson threatened to kill the occupant because he had seen Jackson's face; defendant described Jackson as "a nut." Nevertheless, defendant agreed to rob the murder victims' home with Jackson the following night using the weapons they had obtained in the Newman robbery. It can be inferred that defendant, having heard Jackson threaten to kill the Newman victim because he had seen his face, knew it was possible that Jackson would want to kill the husband and wife, who had seen his face as well when defendant and Jackson used the same ruse of having run out of gas to gain entry.

The record related to the Modesto crimes is devoid of evidence showing defendant tried to rein in Jackson or otherwise help the victims before they were murdered. Thus, even if he was not actually present when Jackson struck the fatal blow or inflicted the mortal stab wound, substantial evidence supports the trial court's finding that defendant was a major participant who acted with reckless indifference to human life. In other words, he was more than merely a passive participant in the events that culminated in the victims' deaths.

**DISPOSITION**

The order denying defendant's section 1172.6 resentencing petition is affirmed.

           /s/
          MESIWALA, J.


We concur:


 /s/
MAURO, Acting P. J.


 /s/
FEINBERG, J.